**WESTERN RADIO CORPORATION, a corporation, and Paul S. Beshore, and W. P. Beshore, individually and as officers of said corporation, Petitioners,**

**v.**

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 14405.**

United States Court of Appeals
Seventh Circuit.

Nov. 23, 1964.

Rehearing Denied Jan. 19, 1965.

Charles Rowan and Willis Hagen, Milwaukee, Wis., for petitioners.

J. B. Truly, Asst. Gen. Counsel, W. Risque Harper, Atty., F. T. C., Washington, D. C., James McI. Henderson, and Charles C. Moore, Jr., Attys., for the Federal Trade Commission.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a petition to review and set aside a cease and desist order of the Federal Trade Commission based upon findings that petitioners were guilty of unfair and deceptive practices and methods of competition in violation of § 5 of the Federal Trade Commission Act [1] by the advertising of their pocket-sized portable radio transmitter, called Radi-Vox. We think the petition should be denied and the Commission's order should be modified and enforced.

The corporate petitioner is a Nebraska corporation and the individual petitioners are its officers who control the policies of the corporation. The business is interstate, and the transmitters were advertised nationally in magazines and by mail. In advertising, petitioners represented, directly or by implication, that the Radi-Vox transmitter was effective "from car to car up to 1–10 miles apart," "between buildings up to ½ mile or more," to any home or car without wires, "no wire connections required!"; "no license or permit required anywhere"; "money back guarantee."

A complaint before the Commission charged that petitioners' advertising had the capacity and tendency to mislead the public, (a) by misrepresenting that no license is required to operate the transmitter, (b) by misrepresenting that the transmitter has broadcasting capabilities greater than those which it in fact possesses, and (c) by failure to disclose a service charge in connection with the advertised unconditional guarantee. Petitioners answered the complaint raising issues decided by the hearing examiner.

On petitioners' appeal from the Initial Decision and Order of the examiner, the Commission, while upholding the examiner's decision sustaining the charges against petitioners, modified the recommended cease and desist order and issued the order subject of this petition for review.

Petitioners are ordered by the Commission, among other things, to cease and desist from representing, directly or by implication:

(a) That their transmitters with or without the use of additional equipment have a satisfactory operational range of any specified distance unless respondents establish that their devices in fact have the operational ranges specified.

(b) That no license or permit is required for any operational use of their radio transmitters unless the specific conditions under which such license or permit would be required are conspicuously set forth in conjunction therewith.

1. 15 U.S.C. §§ 41–46; 47–58.

No objection was made before the Commission to the order to cease and desist from representing

> (c) That any product is guaranteed unless the terms and conditions of such guarantee are clearly and conspicuously set forth, including the amount of any service or other charge which is imposed.

Petitioners argue that there is no substantial support in the evidence for the findings underlying the order with respect to the misrepresentation of the operational range of the transmitter and with respect to the false representations that no license was required for operation of the transmitter.

For its conclusions as to the operational range of the transmitter the Commission relied upon the testimony of expert witness Day, who tested a transmitter furnished by one of petitioners' customers. He made tests in the city, suburbs and country and concluded that communication between the transmitter and cars "up to a mile or more" or between houses "a block or more" was possible, if at all, only under special conditions. Petitioner Paul Beshore testified that since others besides Day were unable to make the transmitter tested by Day work, that transmitter was therefore defective. His testimony was discounted by the Commission because the transmitter's performance in use by Day showed the contrary.

Tests conducted by witness Bourell, engineer in charge of the Kansas City, Missouri office of the Federal Communications Commission, and witness Knight, an FCC Laboratory Engineer, also showed that the transmitter without additional equipment had an operational range far below petitioners' representations. Expert testimony for petitioners was rejected by the hearing examiner and the Commission because their expert's tests were made with additional equipment whereas the advertisements claimed that no wires or other additional equipment were required.

■ We see no merit in the contention that tests of two of 20,000 transmitters produced by petitioners as of January 8, 1960 was insufficient evidence on which to base a finding of misrepresentation as to all of the transmitters. There was no evidence to show that performance of any number of the 20,000 lived up to the advertising claims. There was no need of the Commission showing the scientific, in the sense of theoretical, incapability of the transmitters to meet the advertising claims when the tests showed operational incapability. We think the evidence of misrepresentation was sufficient and we are not persuaded that the Commission should have considered the advertisements as mere "puffing."

■ Typical of petitioners' advertising was that in Popular Science magazine that no license was needed to operate their transmitter. There is evidence that when operated with only the equipment, including the attached 16½ inch antenna, sold by petitioners, no license is needed. But the instructions accompanying the transmitter suggested the use of 50 to 100 foot antennas as an aid to enlarging the operational range, and the testimony of FCC engineers Bourell and Knight shows that a license is required for that suggested use. Tests conducted by Bourell were challenged by the testimony of petitioner Paul Beshore. The Commission, however, credited the testimony of the FCC witness rather than that of Beshore, who had an interest in the outcome of the hearing, and we cannot say that it should not have done so. The Commission correctly refused to consider the advertisements apart from the instructions, which suggested the use of additional equipment in order to achieve better results. The use of additional equipment, according to testimony, was necessary to meet the unqualified claims of the advertisements.

■ There is substantial, relevant evidence in the record sufficient for a reasonable mind to accept as adequate support for the Commission's findings both as to the misrepresentations of operational range and as to the claim that no

license is required. That being so, we must accept those findings, 15 U.S.C. § 45(c), Erickson v. FTC, 272 F.2d 318 (7th Cir. 1959), cert. denied, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960).

Petitioners contend that the Commission's order is too broad in requiring that the "specific conditions" under which a license or permit is required be "conspicuously set forth" in their representation that no license or permit is required for the use of their radio transmitter, since their instruction sheets do not now contain any directions for uses which would require a license. Petitioners need not claim that no license is required to operate their transmitters, but if they choose to do so, in view of their past representations, they may properly be required to reveal the exceptions to their claim lest purchasers be misled into violating FCC regulations. Cf. American Medicinal Products, Inc. v. FTC, 136 F.2d 426 (9th Cir. 1943).

Petitioners also attack the order because it forbids representing "that their transmitters, without use of additional equipment, have a satisfactory operational range of any specified distance" unless they "establish" that fact. Petitioners express fear, that they may be compelled to make proof in advance, of an unknown quantity, to the satisfaction of some unknown person, of prior censorship of advertising, and of a shifting of the burden of proof to them in some later proceeding charging a violation of the order. Reference to the Commission's opinion shows that the word "establish" there was qualified to mean "unless they are able to establish." We take this to mean no more than that petitioners must not speak falsely in advertising their transmitters. In order to make this clear, part (a) of the Commission's order will be modified by the addition of the words "are able to" between the words "respondents" and "establish." We do not anticipate that some court at some future time will regard this order as changing the ordinary rules as to burden of proof.

Petitioners further claim that the order is too broad, that it should be limited to Radi-Vox transmitters and that it gives no guidance as to what they may advertise in the future. The second contention we deem frivolous. As to the first, the record shows that petitioners manufactured other similar products which might be subject to the same type of misrepresentations. The order has a reasonable relation to the prevention of the unlawful practices found to exist and we therefore withhold interference with the exercise of the Commission's power to frame orders. FTC v. National Lead Co., 352 U.S. 419, 428, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957), National Bakers Services, Inc. v. FTC, 329 F.2d 365, 367, (7th Cir. 1964), Erickson v. FTC, 272 F.2d 318 (7th Cir. 1959), cert. denied 362 U.S. 940, 80 S.Ct. 805 (1960).

At the hearing Commission investigator Snavely testified that he had submitted to the project attorney in Washington a report with which he forwarded the test reports. Petitioners sought to examine this report for impeachment purposes. Their motion was denied by the hearing examiner and petitioners now claim that under the rule of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), they were denied a fair hearing. The Commission in its opinion expressly disclaimed any reliance on the testimony of Snavely on any substantive issue. With approval of the parties we ordered the report certified to this court and we have examined it. It is, as the Commission noted after examining it, "a skeletal memorandum of transmittal consisting of one page, forwarding * * * transmitters and listing field reports submitted," with no value for impeachment purposes. Petitioners were not harmed by the error, if any, in the denial of their motion.

For the reasons given, the order is modified as indicated, and as modified the order will be enforced and the petition denied.

Enforcement ordered.