S. S. S. COMPANY, Inc. and Tucker Wayne & Company, Inc., Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 19029.

United States Court of Appeals Sixth Circuit.

Oct. 6, 1969.

Edward E. Dorsey, Atlanta, Ga., for petitioners; Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., on brief.

Gerald J. Thain, Atty., F. T. C., Washington, D. C., for respondent; J. B. Truly, Asst. Gen. Counsel, Atty., F. T. C., Washington, D. C., J. William Brennan, Atty., F. T. C., Washington, D. C., on brief.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

WEICK, Circuit Judge.

Petitioners, SSS Company and its advertising agency, Tucker Wayne & Company, seek to review and set aside an or-

der of the Federal Trade Commission requiring them to cease and desist from false and misleading advertisements of SSS Company's tonic in violation of Sections 5 and 12 of the Federal Trade Commission Act.[1]

The advertisements were aimed principally at the rural and urban poor. Typical of the advertisements is the following radio broadcast:

"Do you find yourself *missing out* on the fun of life? Do you feel, dull, draggy * * * just 'too tired' to do things? Then maybe you're suffering from Iron Deficiency Anemia—*low blood power*. If so, what you need is Three-S Tonic! New formula Three-S Tonic—now with B vitamins—is rich in iron to help *build back* your blood power * * * *restore* your energy * * * help you *feel better fast!* Three-S Tonic goes to work within *24 hours*. And if you don't feel better in just *six days* the Three-S Company will refund your money * * * every cent of it! So don't *miss out* on the fun in life. Don't *let* yourself feel 'too tired' to enjoy things. If *you're* suffering from Iron Deficiency Anemia, take Three-S Tonic! Yes, yes, yes, * * * get S.S.S.! Get started on new-formula, iron-and-vitamin-enriched Three-S Tonic * * * in liquid or tablet form * * * * right away!"

The Commission found that such advertisements created for listeners the false impression that tiredness and lack of pep or energy symptoms experienced by many people were the result of iron

deficiency or iron deficiency anemia, and would be cured or alleviated by SSS tonic which contains iron, vitamins and various herbs. The truth, as found by the Commission, is that only a small minority of people suffer from tiredness or lack of energy due to iron deficiency or iron deficiency anemia, and in most cases these symptoms are attributable to other ailments, for the treatment of which the tonic is not a remedy.

The SSS preparations were specific only for the treatment of iron deficiency and iron deficiency anemia and are worthless in the treatment of the other ailments. The vitamins and herbs in the SSS preparations are of no benefit even in the treatment of iron deficiency or iron deficiency anemia.

There is substantial evidence in the record to support the factual findings of the Commission and they are binding on us. In our judgment, the Commission correctly interpreted the language of the advertisements.

■ This case is similar to and is controlled by our decision in J. B. Williams Co. v. Federal Trade Comm., 381 F.2d 884 (6th Cir. 1967), in which we sustained a cease and desist order of the Commission prohibiting false and misleading advertisements of the product "Geritol".

The Commission's Order in the present case required that any representations by petitioners that their preparations are beneficial in treating tiredness symptoms be limited to those symptoms caused by a deficiency of one or more of the vitamins or iron provided by such preparations,

---

I. Section 5(a) (1), 15 U.S.C. § 45(a) (1):
"Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."
Section 12, 15 U.S.C. § 52:
"(a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—
(1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the pur-

chase of food, drugs, devices, or cosmetics; or
(2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.
(b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 45 of this title."

and further required that their representations must be accompanied by the affirmative disclosure that the great majority of persons experiencing tiredness symptoms will derive no benefit from such preparations. We approved an order requiring such an affirmative disclosure in *J. B. Williams Co., supra*.

Paragraph 1(b) of the Commission's Order further prohibits petitioners from representing that the SSS preparations will be of benefit to any particular population group, provided, however, that it shall be a defense in any future enforcement proceedings for petitioners to show either that there is a reasonable probability that a majority of persons within such group suffers from iron or vitamin deficiency or iron deficiency anemia or that their advertising did no more than truthfully and accurately represent the percentage of persons in a specific population group with such deficiencies. Petitioners argue that this provision is beyond the Commission's power, claiming that it shifts the burden of proof from the Commission to them in future enforcement proceedings.

The record indicates that it is very unlikely that there is any major population group the majority of whose members at any one time suffer deficiency of the ingredients of the SSS preparations. Rather than broadly prohibit all such representations, the Commission has given petitioners authority to make these representations so long as they are completely truthful. It seems quite clear that rather than impose a burden, the Commission has allowed them an "escape". Colgate-Palmolive Co. v. Federal Trade Comm., 326 F.2d 517, 523 (1st Cir. 1963), rev'd, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) (order enforced in toto).

Petitioners further contend that the provisions of paragraphs 1(a), 1(b) and 1(g) of the Order cannot stand in their present form because these paragraphs contain prohibitions against representations that the SSS preparations will be of benefit to the general public in the *prevention* of iron or vitamin deficiency or iron deficiency anemia. Petitioners do not maintain that it would be truthful for them to make such representations. They argue instead that they were not given notice that the question of prevention would be in issue; that there was no evidence pertaining to this question adduced at the hearings; and that no findings were made concerning the question of prevention. We see no merit in these contentions.

As before stated, the evidence substantiates the finding that only a small minority of the population suffer from iron or vitamin deficiency or iron deficiency anemia. The Commission's Order would be rendered largely nugatory if the prohibitions relating to prevention were not enforced. Without such prohibitions petitioners would be able to promote their preparations as something which the preparations clearly are not, *i. e.*, prophylactics for deficiencies commonly experienced by the general public.

As to petitioners' contention involving notice, the Supreme Court has, under similar circumstances, held:

"The emphasis that there was no charge, no evidence, no finding to support the inclusion of the objectionable provision in the order is misplaced. Its insertion was nothing more than a mode of implementation, selected by the Commission, to enforce its findings of violations of the Act." Federal Trade Comm. v. National Lead Co., 352 U.S. 419, 427, 77 S.Ct. 502, 508, 1 L.Ed. 2d 438 (1957).

Petitioners object to that part of the Commission's Order (paragraph 1(a) (2) and (3)) which requires them to disclose the fact that the presence of iron deficiency anemia or of iron or vitamin deficiency cannot be self-diagnosed and can be determined only by means of medical or laboratory tests conducted by or under the supervision of a physician. Objection is made also to those sections of the Order (paragraph 1(c), (d), (e) and (f)) which prohibit petitioners from repre-

senting, directly or indirectly or by implication, that:

"(c) The presence of iron deficiency anemia or iron deficiency of any degree can be self-diagnosed.

"(d) The presence of iron deficiency anemia or iron deficiency of any degree can generally be determined without medical or laboratory tests conducted by or under the supervision of a physician.

"(e) The presence of a deficiency of the B vitamins, or of any vitamin, can be self-diagnosed.

"(f) The presence of a deficiency of the B vitamins, or of any vitamin, can generally be determined without medical tests conducted by or under the supervision of a physician." (101a)

Petitioners assert that these requirements are unenforceable under this Court's decision in *J. B. Williams Co., supra,* 381 F.2d, at 891, wherein we stated:

"The Commission forbids the Petitioners' representation that the presence of iron deficiency anemia can be self-diagnosed or can be determined without a medical test. The danger to be remedied here has been fully and adequately taken care of in the other requirements of the Order. We can find no Congressional policy against self-medication on a trial and error basis where the consumer is fully informed and the product is safe as Geritol is conceded to be. In fact, Congressional policy is to encourage such self-help. In effect the Commission's Order 1(f) tends to place Geritol in the prescription drug field. We do not consider it within the power of the Federal Trade Commission to remove Geritol from the area of proprietary drugs and place it in the area of prescription drugs."

We are required to determine whether *J. B. Williams Co., supra,* precludes the inclusion in the order of the paragraphs noted above.

There is a difference between self-diagnosis and self-medication. As the Commission correctly pointed out, self-medication may be possible where self-diagnosis is not. Thus, a diabetic may be able to administer to himself insulin, but this does not prove that diabetes may be self-diagnosed. On the other hand, a layman could correctly diagnose a fractured leg, without being able to treat it. Regardless of the propriety of the application of the Congressional policy favoring self-help in *J. B. Williams Co., supra,* we think that it is inapplicable here.

Writing for a unanimous Commission, Commissioner Elman aptly stated:

"As we have noted, the evidence in this case overwhelmingly supports the conclusion that iron deficiency and iron deficiency anemia cannot be self-diagnosed. The evidence also supports the examiner's parallel conclusion that vitamin deficiency is virtually non-existent and cannot properly be diagnosed without physician. Representations to the contrary are false and deceptive and cannot be condoned on the ground that Congressional policy favors self-medication on a trial-and-error basis. Provisions in the examiner's order forbidding respondents from making such false representations, even when their advertisements do not mention tiredness, are necessary and will be included in the final order. Nor do we believe that a prohibition of such representations, which is essential if the Commission's order is to be effective in protecting the public and insuring that purchasers of respondents' products are fully informed before buying, will place the S.S.S. preparations in the prescription drug field. Nothing in the order will prohibit respondents from representing that the S.S.S. preparations are effective in treating a properly diagnosed case of iron deficiency or iron deficiency anemia. On the contrary, our order is intended to encourage respondents to utilize truthful representations such as these instead of relying on falsehoods, misstatements, or half-truths that are misleading because material facts are omitted." (116a–117a) (Footnotes excluded)

As to the disclosure provisions of the Order, the Commission stated:

"We are adding to paragraph 1(a) of the order, which deals with the tiredness symptoms, the requirements that when the SSS products are represented as a cure for tiredness, or as a cure for vitamin or iron deficiency causing tiredness, respondents must also disclose that such deficiencies cannot be self-diagnosed but can be determined only by medical or laboratory tests conducted by or under the supervision of a doctor. Our order will require respondents to disclose all the material facts when their advertisements invite people to conclude that their tiredness is related to an iron or vitamin deficiency which can be remedied by the SSS products." (118a)

We agree with the Commission's analysis, particularly where, as here, petitioners not only utilize mass advertising as the primary stimulant for sales, but also direct that advertising principally to the urban and rural poor. (Pets' Brief at 22; 118a). The Commission stated:

"This need [*i. e.*, the need of disclosure] is illustrated by the present case, where respondents admit that among the principal groups to whom their advertising is directed are the urban and rural poor—who are less likely to get the medical attention they need, who are more likely to be uneducated and uninformed, and who are thus most likely to be victimized by improper self-medication resulting from false and misleading advertising." (118a)

We agree with the Commission that the objects of petitioners' advertising campaign will *not* be fully informed of the material facts unless the entire Order is enforced. In a case such as this, the fact that Congress may not have a policy against self-medication on a trial and error basis where the product is not harmful, (*J. B. Williams Co., supra* 381 F.2d, at 891), cannot be used to sanction misleading advertising material. In our judgment, the Commission had power to enter the Order which it did.

Nor do we find that this Order places these preparations in the prescription drug field. Anyone, whether or not he is properly informed, may purchase petitioners' preparations without a prescription.

We find no violation of petitioners' First Amendment rights in the Commission's Order. They are free to advertise their product; they are prohibited only from making false and misleading statements which they have no constitutional right to disseminate. Regina Corp. v. Federal Trade Comm., 322 F.2d 765, 770 (3d Cir. 1963); E. F. Drew & Co. v. Federal Trade Comm., 235 F.2d 735 (2d Cir. 1956), cert. denied, 352 U.S. 969, 77 S.Ct. 360, 1 L.Ed.2d 323 (1957).

The Commission's Order to cease and desist is affirmed and enforced.