**NATIONAL DYNAMICS CORPORATION, a corporation, and Elliott Meyer, Individually and as an officer of said corporation, Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 355, Docket 73-1754.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1974.

Decided March 6, 1974.

---

Jerold W. Dorfman, New York City (Friend & Dorfman, New York City, of counsel), for petitioners.

John T. Fischbach, Federal Trade Commission, Washington, D. C. (Calvin J. Collier, Gen. Counsel, and Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., of counsel), for respondent.

Before MOORE, FRIENDLY and AN-DERSON, Circuit Judges.

PER CURIAM:

National Dynamics Corporation (NDC) manufactures a battery additive known as VX–6. It markets the product largely through some 12,000 distributors. Some of these work on a full-time

basis, but most work only part-time. The distributors are not NDC employees, but the company supplies them with sales and advertising materials with which to promote the product.

In November 1969, the Federal Trade Commission issued a complaint against NDC's advertising practices. Broadly speaking, the charges were of two sorts: Some related to allegedly misleading claims concerning potential earnings of VX–6 distributors; others concerned the performance claims NDC made for its product. Following the leisurely course typical of FTC proceedings, this one led to a six paragraph cease and desist order issued February 16, 1973, and ended in an order denying reconsideration dated May 1, 1973.

Only four of the six ordering paragraphs are challenged. Two of these, paragraphs 1 and 2, relate to the overly enthusiastic depiction of the rewards awaiting prospective distributors; one, paragraph 4, relates to representations concerning the performance of VX–6; the remaining one, paragraph 6, directs NDC to deliver a copy of the order to all present salesmen or other persons engaged in the sale of its products and to secure a signed statement acknowledging receipt.

■ Paragraph 1 requires NDC to cease and desist from

Representing, directly or by implication, that persons purchasing respondents' products can or will derive any stated amount of sales, profits or earnings; or representing, directly or by implication, the past or present sales, profits or earnings of purchasers of respondents' products unless in fact the past sales, or the profits and earnings represented, are those of a substantial number of purchasers and accurately reflect the average sales, profits or earnings of such purchasers under circumstances similar to those of the purchaser or prospective purchaser to whom the representation is made; or misrepresenting, in any manner, the past, present or future sales, profits or earnings from the resale of respondents' products.

In the course of its attack on this paragraph, NDC says it cannot feasibly comply with the phrase "under circumstances similar to those of the purchaser or prospective purchaser to whom the representation is made" since it does not know what the circumstances of any particular purchaser may be. Apparently the Commission was endeavoring to require NDC to disclose whether the distributors whose earnings they cited worked part-time or full-time, but the language is not well adapted to carrying out this sound purpose. We likewise do not see why NDC should be limited to advertising only the average sales or earnings of its distributors rather than be permitted to state ranges for various types of distributors, provided it does not make deceptive use of unusual earnings realized only by a few. We shall not undertake to redraft the paragraph; with some good will on both sides, these problems should be readily susceptible of resolution.[1]

■ Changes in paragraph 1 will require conforming changes in paragraph 2 which requires NDC to maintain records substantiating the accuracy of its representations. Beyond that, while the Commission can permissibly require NDC to keep records of the sales of distributors in various basic categories, such as part-time and full-time workers, the requirement that the records reflect the sales, profits or earnings of distributors "under circumstances similar to" purchasers or prospective purchasers is too vague. NDC also objects to the recordkeeping requirement because it claims that it cannot feasibly obtain the profit and earn-

---

1. NDC has called our attention to the action of the FTC in approving an affidavit of compliance on a similar issue in Matter of Merlite Industries, Inc., File No. 6523049, dated March 1, 1967. Without in any way limiting the FTC to that formulation, we think it may afford a useful basis from which to start a redraft.

ings figures of its thousands of distributors. Commission counsel answers that NDC must have records showing the sales to each distributor and information concerning the permitted markup, and that this would suffice if the representations were similarly limited. We think this paragraph should be clarified as indicated. On the other hand, NDC's argument that it was denied due process because the recordkeeping provision was not sought in the complaint, although it was proposed in complaint counsel's appeal brief to the Commission and answered by NDC, is without merit, FTC v. National Lead Co., 352 U.S. 419, 427–428, 77 S.Ct. 502, 1 L.Ed.2d. 438 (1957), as NDC's broader attacks even more plainly are.

█ Paragraph 4 of the order directs NDC to cease and desist from

Representing, directly or by implication, in any advertisement that an independent laboratory has tested any product or that any laboratory test substantiates or supports performance claims in said advertisement, unless each performance claim in said advertisement has been substantiated by a competent scientific test conducted by said laboratory or laboratories and unless such laboratory or laboratories have supplied respondents with a written report which describes, in detail, the entire test performed, including, but not limited [to], the product tested, instruments used, test procedures, data and results of such test.

NDC says this is inconsistent with the findings by the Administrative Law Judge and the Commission that the test reports in the company's possession adequately substantiated its claims concerning the effectiveness of VX–6. However, both the Administrative Law Judge and the Commission found that NDC's performance claims relating to the durational capacities of VX–6 were clearly unsubstantiated. The Commission further found that petitioners had expressly or impliedly represented VX–6 as laboratory-tested, without qualification, and that those representations had conveyed the misleading impression that the duration-of-effect claims were based on laboratory tests. Although petitioners contend that paragraph 4 should, at most, prohibit only unsubstantiated durational claims, the paragragh as written appears reasonably related to the misrepresentations found by the Commission. Accordingly, we find no flaw in paragraph 4, FTC v. Colgate-Palmolive Co., 380 U.S. 374, 389–390, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).[2]

█ We likewise see no merit in NDC's objections to paragraph 6, described above. NDC's point is that since it supplies the distributors with all the advertising materials, there is no need to send a copy of the order and obtain a receipt. But distributors may have a supply of old materials and may not confine themselves to the written word. Since the copies of the order can be delivered along with the revised advertising material, the only burden on NDC is of using certified mail so as to obtain a receipt. To impose this requirement is well within the broad power confided to the FTC in framing remedial orders.

The petition to review is denied except with respect to Paragraphs 1 and 2 of the order which are remanded to the Commission for reformulation in accordance with this opinion. No costs.

---

2. Petitioners contend that the initial complaint and proposed order did not adequately identify the issues to be litigated. However, the complaint sufficiently alleged that the performance claims had not been substantiated through adequate testing and that the product had not been "fully tested," and paragraph 4 of the final order is a narrower version of the two portions of the proposed order dealing with representations of testing.