**JAY NORRIS, INC., Joel Jacobs, and Mortimer Williams, Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 623, Docket 78–4151.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 1979.

Decided May 1, 1979.

Robert Ullman, Bass, Ullman & Lustigman, New York City, for petitioners.

Jerold D. Cummins, Deputy Asst. Gen. Counsel, F. T. C., Washington, D. C. (Michael N. Sohn, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, Clarence R. Laing, Jr., Atty., Washington, D. C., of counsel), for respondent.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

Petitioners, a gift and novelty mail-order house and its two shareholders, officers, and directors, launch a multi-pronged attack against one rather poorly phrased paragraph of a lengthy Federal Trade Commission cease and desist order issued under Section 5(a) of the Federal Trade Commission Act (the Act), 15 U.S.C. § 45(a).[1] After a series of modifications[2] the paragraph (Part I, Paragraph 6) prohibits petitioners from "[r]epresenting the safety or perform-

---

1. Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), provides:

   Unfair methods of competition unlawful; prevention by Commission—Declaration of unlawfulness; power to prohibit unfair practices

   (a)(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful.

   (2) The Commission is empowered and directed to prevent persons, partnerships, or corporations [with exceptions not relevant here] from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

   Petitioners seek review of the Commission's order as authorized under § 5(c) of the Act, 15 U.S.C. § 45(c).

2. The Commission's staff counsel goes by the title of counsel supporting the complaint or Complaint Supporting Counsel. She proposed in the draft order accompanying the complaint (under Federal Trade Commission Rules, 16 C.F.R. § 3.11(b)(3) where practical the pro-

posed order is a part of the complaint) that petitioners be prohibited from

   Representing the safety, efficacy, performance, content or any other characteristic of any product unless such claims are fully and completely substantiated by a reasonable basis which shall consist of competent scientific tests and such substantiation material is available to the public. In cases where respondent can show that no competent scientific test can substantiate the claim, a reasonable basis shall consist of other competent objective material.

The administrative law judge modified the proposed order to read:

   Representing the safety, efficacy, performance, content, or any other characteristic of any product unless such claims are fully and completely substantiated by a reasonable basis which shall consist of competent objective material and substantiative material is available to the public.

The Commission in turn modified the administrative law judge's order to read as set forth in text.

ance of any product unless such claims are fully and completely substantiated by a reasonable basis which shall consist of competent and objective material available in written form."

The attack on this paragraph—the arguments tend to overlap—is that it improperly shifts the burden of proof to petitioners in a possible future false or deceptive advertising charge; is beyond the Commission's statutory power under Section 5(a)(1) of the Act, 15 U.S.C. § 45(a)(1); is too broad for purposes of injunctive relief; is unduly burdensome as well as vague and indefinite; was reached by "*ad hoc* adjudication" rather than by rule-making; and is an unconstitutional interference with and prior restraint on Free Speech. We are not persuaded by any of the arguments advanced, but we do rephrase the order in the interest of clarity.

## I. FACTS

Petitioner Jay Norris, Inc. (Norris), has done business for twenty-five years by mail-order catalogues and advertisements in national newspapers like the New York Times and magazines like TV Guide. The instant proceeding, Norris's third before the Federal Trade Commission (FTC or Commission) within fifteen years,[3] involved false and deceptive advertising claims made

as to efficacy, performance, and safety in connection with six widely varying products —(1) a propane "flame gun" that would "dissolve the heaviest snow drifts, whip right through the thickest ice"[4]; (2) roach powder that was "completely safe to use" and "never loses its killing power—even after years"[5]; (3) an "electronic miracle" that makes "your home wiring a huge [TV or FM radio] antenna for super reception"[6]; (4) a "5-year" flashlight that carries an "absolute 5-year guarantee"[7]; (5) a "minted" Lincoln-Kennedy Commemorative" penny accompanied by a free "Plaque of Coincidences"[8]; and (6) "carefully maintained" cars "in regularly maintained fleet use . . thoroughly serviced."[9] The quotations are selective and are by no means inclusive of the falsity and deception that the advertising blurbs relating to these six products display.

Both the administrative law judge and the Commission itself gave careful attention to the petitioners' arguments attacking the order originally proposed with the complaint by the complaint counsel, and each in turn modified that proposal. *See* note 2, *supra.* In supporting the breadth of the order entered, the administrative law judge and Commission each relied on cases upholding somewhat similar orders requiring objective substantiation for scientific claims

3. The first FTC proceeding against petitioners ended in a consent order prohibiting various misrepresentations of vitamins and vitamin-mineral preparations. *Jay Norris Co.,* 68 FTC 702 (1965). The second proceeding was an adjudication of violations because of petitioners' misrepresentations of wholesaling and wholesale prices. *Federated Nationwide Wholesalers Service v. FTC,* 398 F.2d 253 (2d Cir. 1968).

In addition, Jay Norris has been subjected to orders of the United States Postal Service as well as the New York State Bureau of Consumer Frauds and Protection. After a hearing by an administrative law judge, the Postal Service determined that Norris was engaged in a scheme or device for obtaining money or property through the mail by means of materially false representations in connection with its Lincoln-Kennedy penny, one of the same items that was at issue here. The Postal Service's Judicial Officer entered an order on February 27, 1974, limiting the postal services thereafter available to Norris. Norris has also agreed

with the New York consumer protection agency in an Assurance of Discontinuance dated June 30, 1976, *that it would cease and desist* from representing simulated or imitation substances as genuine or natural.

4. According to expert testing and consumer testimony, it did neither.

5. It was neither safe nor so deadly.

6. It does not.

7. The manufacturer's guarantee was for five years' *or* ten hours' use.

8. There is no such official penny; and the item offered for sale has no numismatic or historical significance, is not "commemorative," and was never "minted." The "Plaque" was not free.

9. The cars, no longer sold, were former New York City taxicabs, and many owners had nothing but trouble with them.

but involving discrete products, e. g., *Fedders Corp. v. FTC,* 529 F.2d 1398 (2d Cir.) (air conditioners), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *Firestone Tire & Rubber Co. v. FTC,* 481 F.2d 246 (6th Cir.) (tires), *cert. denied,* 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 739 (1973); the Commission also relied on its case which held that representations of objective product characteristics made without substantiation are for that reason deceptive. *National Dynamics Corp.,* 82 FTC 488, 559–60 (1973), *aff'd in pertinent part,* 492 F.2d 1333 (2d Cir.), *cert. denied,* 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974). The Commission further pointed out that the order's substantiation requirement related only to safety and performance (efficacy) claims, not other characteristics, although the order, as in *American Aluminum Corp.,* 84 FTC 21 (1974), *aff'd,* 522 F.2d 1278 (5th Cir. 1975), covers all of petitioners' products. The Commission also referred to petitioners' history of violations and noted that the deceptive advertising here covered products widely varying in price and use, making product coverage of the order incapable of limitation to a narrow subgroup.[10]

## II. DISCUSSION

### A. *Shift in the Burden of Proof*

Petitioners contend that the requirement of full and complete substantiation prior to its representation of the safety and performance of any product evidences an "explicit intention . . . to relieve the Commission of its burden of proving any alleged falsity of safety or performance representations made by Petitioners for any product." There is no doubt that the Commission has the burden of proof in administrative proceedings precedent to the is-

suance of a cease and desist order; petitioners correctly cite to Section 4(d) of the Administrative Procedure Act, 5 U.S.C. § 556(d), and the Commission's Rules of Practice for Adjudicative Proceedings, 16 C.F.R. § 3.43(a), in support of this principle.[11]

The precise claim, however, is that the practical effect of the Commission's order brings about a shift of burden of proof in a subsequent proceeding in a federal district court under Section 5(*l*), 15 U.S.C. § 45(*l*), to enforce a cease and desist order. For example, petitioners say, if they advertise Brand X as 100% effective, the Commission may, utilizing the order, challenge the claim as without substantiation, without regard to whether the representation is true or false; and once the Commission raises this challenge petitioners would have the burden of producing "competent and objective material available in written form" to rebut the charge.

This court in *Federated Nationwide Wholesalers Service v. FTC,* 398 F.2d 253 (2d Cir. 1968), held that the shifting of the Commission's burden in a subsequent enforcement proceeding was impermissible. *But see S. S. S. Co. v. FTC,* 416 F.2d 226, 229 (6th Cir. 1969). However, it was the specific wording of the order at issue in *Federated* that brought about the shift. In *Federated,* the Commission's order coupled an express prohibition against a seller's representation that it was a wholesaler or sold merchandise at wholesale prices with a proviso that the seller would have a "defense" in any enforcement proceeding if the seller made substantial sales to retailers or if the prices did not exceed the prices paid by retailers. But one obvious problem with the order was that it did not take into

10. The Commission's opinion observed at footnote 35:

No logical sub-grouping of respondents' products is suggested as a basis for limiting product coverage and there appears to be none. Respondents' products generally, like the ones involved in this case, vary tremendously in price and use. In any event, this record demonstrates that respondents' penchant for misrepresentation of performance

is not confined to a narrow sub-group of products they sell.

11. The cited statute and Rules of Practice relate not to the enforcement of remedial orders in the courts but to the burden of proof in administrative proceedings to determine a statutory violation, a distinction pointed out in *United States v. J. B. Williams Co.,* 498 F.2d 414 (2d Cir. 1974), at 441–45 (dissenting opinion).

account the evidence in the record that "40% of the . . . sales *[we]re* made to retailers and *[we]re* therefore wholesale transactions," *id.* at 259 (emphasis added); in these cases the seller's representations fell within the first part of the proviso and could not properly have been the basis for any enforcement proceeding, no matter who had the burden of proof. Another problem with the order is more relevant to the specific challenge that Norris raises with regard to the burden of proof. By absolutely prohibiting the representations and allowing a defense, "the Commission [decreed] what in effect [wa]s clearly a shifting of the burden of proof from itself to petitioners," which the court held was unwarranted. *Id.* at 260.[12]

*Federated* obviously does not stand for the proposition that every FTC order containing a prohibition amounts to a shift in the burden of proof. The court noted, 398 F.2d at 260, that the Seventh Circuit in *Western Radio Corp. v. FTC,* 339 F.2d 937, 940 (7th Cir. 1964), *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965), had reviewed an order requiring the manufacturer to cease and desist from making certain statements about the merits of its product unless it established that the claims were true. The Seventh Circuit, in rejecting the argument that the order shifted the burden of proof, construed the order as only prohibiting false advertising and noted in dictum that it did not anticipate that a court in an enforcement proceeding would regard the order as having shifted the burden of proof. The court in *Federated* was careful to point out that it reached the issue of the burden of proof only because the order that it was reviewing was "too explicit to be subject to a validating interpretation." 398 F.2d at 260. And the *Federated* court in fact approved an order prohibiting the seller from representing that it was a wholesaler or sold at wholesale prices unless it made a substantial and significant num-

ber of sales to retailers and sold at prices generally paid by retailers. *Id.*

It is thus apparent that this case is different from *Federated* and that the perceived shift in the burden of proof in that case is not involved here. Here there is no defense carved out by way of proviso from an absolute and overinclusive prohibition, the express wording of which in *Federated* compelled the court to find a shift in the burden of proof. The order here is for all practical purposes of the same form and effect as the order approved in *Western Radio Corp.* and the order as modified in *Federated;* it is not at all like the order struck down in *Federated* (even though, we note, upheld in *S. S. S. Co., supra*). We find no explicitness preventing "a validating interpretation"; rather, we agree with the Seventh Circuit that a court in an enforcement proceeding would recognize no shift in the burden of proof.

Norris asserts that

[w]ithout the slightest change in its meaning or impact of the words being used, the order in the instant case might just as well use the words that Petitioner shall cease and desist from:

"[m]aking representations as to the safety or performance of any product; provided, however, that it shall be a defense in any enforcement proceeding under this order for petitioners to show:

(a) that such claims are fully and completely substantiated by a reasonable basis and

(b) that such reasonable basis consists of competent and objective material available in written form."

But the "change in . . . meaning or impact of the words being used" is the very difference between the Commission's order in *Federated,* which the court held was impermissible, and the order that the court itself in *Federated* imposed. Under the or-

---

12. The court acknowledged the Commission's "broad discretion" under *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 392, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965), and agreed that " 'those caught violating the Act must expect some fencing in,' *FTC v. National Lead Co.,* 352 U.S. 419, 431, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957)." *Federated Nationwide Wholesalers Service v. FTC,* 398 F.2d 253, 260 (1968).

der in the instant case, the Commission has the burden of showing in a civil penalty proceeding in federal district court both (1) that Norris made a safety or performance representation and (2) that it lacked adequate substantiation at the time that it made the advertising claim. Under the Norris version above the Commission would only have to show that Norris made the claim. Norris's failure, if any, to comply with the requirement of prior substantiation is part of the Commission's case; compliance is not part of Norris's case by way of defense.

To the extent that any such requirement imposes a burden, it is more akin to a burden of production than a burden of proof. The issue is whether the order as a whole is reasonable in light of the Commission's findings and its broad remedial powers. *See* note 12 *supra.* As we stated recently in *ITT Continental Baking Co. v. FTC,* 532 F.2d 207, 220–21 (2d Cir. 1976):

> "[T]he Commission has a wide discretion in its choice of a remedy to 'cope with the unlawful practices' disclosed by the record," *Fedders Corp. v. FTC,* 529 F.2d 1398, 1401 (2 Cir. 1976), quoting *FTC v. Mandel Bros. Inc.,* 359 U.S. 385, 392, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959), and . .
>
> "[s]o long as the remedial order is reasonably related to the unlawful practices found to exist, the Commission's order should be upheld." *Fedders, supra,* at 1402.

*See also Chrysler Corp. v. FTC,* 182 U.S. App.D.C. 359, 366, 561 F.2d 357, 364 (1977). To that question we now turn.

**B.** *The Commission's Statutory Power*

Petitioners, perhaps in another. way of making their first point, argue that the order is beyond the Commission's statutory power because Section 5(a)(1) of the Act, 15 U.S.C. § 45(a)(1), relates only to "unfair or deceptive acts" and does not define violations with respect to prior substantiation and lack of substantiation for the assertion made. Thus, if a representation is true, the argument runs, no one is deceived or treated unfairly by the mere lack of prior substantiation. But cases both without and within this circuit have held otherwise in situations where a seller or manufacturer has misrepresented safety or performance. The Sixth Circuit has upheld an order prohibiting representations as to tire performance or safety characteristics "unless each such characteristic [is] fully and completely substantiated by competent scientific tests." *Firestone Tire & Rubber Co. v. FTC, supra,* 481 F.2d at 250. This court has upheld an order prohibiting claims as to the air cooling, dehumidification, and circulation performance characteristics of air conditioners unless the manufacturer "has a reasonable basis for such statement or representation, which shall consist of competent scientific, engineering or other similar objective material or industry-wide standard based on such material." *Fedders Corp. v. FTC, supra,* 529 F.2d at 1400–01. And we followed *Fedders* in spirit with *ITT Continental Baking Co. v. FTC, supra,* 532 F.2d at 220–21, even though we there limited an order that prohibited representations as to "nutritional properties . . . unless the advertised nutritional value can be substantiated for the average and ordinary use of the product by consumers." But the ground of modification was that the order was not reasonably related to the misrepresentation charged, and *ITT* is not a limitation on the FTC's power to require prior substantiation in a proper case as a reasonable remedy for specific deception practiced. *See also National Dynamics Corp. v. FTC, supra,* 492 F.2d at 1336.

In each case, of course, the prohibitions of the remedial order must bear a reasonable relationship to the deceptive acts found. Because there is no question that Norris wrongfully made safety and performance representations in the past, the requirement of prior substantiation is properly imposed in the remedial order as reasonably calculated to prevent violations of the sort found to have been committed. The requirement is not imposed as an additional burden on petitioners in respect to their truthful claims; rather it prohibits only claims that they cannot substantiate even while it permits continued advertising on the basis of

all truthful, objectively substantiated claims.

We agree with the FTC that its order is a "mere[] recogni[tion]" that Jay Norris is in a better position than consumers to evaluate safety and performance claims for products sold by it and that, given the proven predilection of Jay Norris to misstate these characteristics, the company [may] henceforth be required to have a reasonable basis for such claims." In fact, as the Commission has pointed out, the obligation that it imposes on Norris is "no greater than is required of all advertisers under Section 5." It is merely more explicit. As a proper remedy for past violations, this much we leave—and must in the nature of the administrative procedure—to the agency's expertise and sound discretion.

## C. The Order's Breadth and Definiteness of Terms

Petitioners argue, nevertheless, that this order is too broad because it covers all of the myriad of its products when only six were shown to have been deceptively represented.[13] Petitioners also contend that the order is too vague and imprecise.

The broadness attack can be dealt with quickly. First, the order covers only safety and performance representations, the specific characteristics that petitioners are wont to exaggerate. See note 2 supra. Second, as to the order's coverage of items other than those as to which deception has been specifically found, it is well settled that this agency, like others, may fashion its relief "as a prophylactic and preventive measure," FTC v. Mandel Brothers, Inc., 359 U.S. 385, 392–93, 79 S.Ct. 818, 824, 3 L.Ed.2d 893 (1959), to restrain other similar or related acts, at least where the misrepresentations have been so extensive and so substantial in number. Where misrepresentation is "not restricted to an isolated instance but [is] found in numerous advertisements . . . courts have often upheld FTC orders encompassing all products or all products in a broad category, based on vio-

lations involving only a single product or group of products." ITT Continental Baking Co. v. FTC, supra, 532 F.2d at 223 (collecting cases). In this case, "all product" coverage is particularly appropriate because the six particular products specifically mentioned in the complaint are random samplings of Norris's inventory, see note 10 supra, which is constantly changing and which petitioners could manipulate to avoid the substantiation requirement if the order were directed only against specific products. As the Supreme Court said in FTC v. Colgate-Palmolive Co., 380 U.S. 374, 395, 85 S.Ct. 1035, 1048, 13 L.Ed.2d 904 (1965), "it [is] reasonable for the Commission to prevent . . . similarly illegal practices in future advertisements." So, too, in tailoring a remedial order to fit future proclivities, the Commission may take into account petitioners' past history of noncompliance. See Motion Picture Studio Mechanics, Local 52 v. NLRB, 593 F.2d 197, 200–01 (2d Cir. 1979), following NLRB v. Express Publishing Co., 312 U.S. 426, 436–37, 61 S.Ct. 693, 85 L.Ed. 930 (1941); see also K. Davis, Administrative Law Treatise § 8.19 (1958 & 1970 Supp.).

Petitioners' argument that the order is vague and imprecise must stand or fall with the same arguments regarding the relationship of the order to the unlawful practices found. Thus, although the Supreme Court quoted from cases holding that "an order's prohibitions 'should be clear and precise in order that they may be understood by those against whom they are directed,' " especially because of the severe penalties to which violators may be subject, citing FTC v. Cement Institute, 333 U.S. 683, 726, 68 S.Ct. 793, 92 L.Ed. 1010 (1948), and FTC v. Henry Broch & Co., 368 U.S. 360, 367–68, 82 S.Ct. 431, 7 L.Ed.2d 353 (1962), the Court reiterated in the same breath that "it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.' " FTC v. Colgate-Palmolive Co., supra, 380 U.S. at 392–93, 85

---

13. Because the complaint was limited to these six items, the Commission's counsel was pre-

vented by the administrative law judge from introducing evidence as to other items.

S.Ct. at 1046, *quoting from Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952). The Court in *Colgate* implied that justified broadness did not make an order too vague; and as noted above, it upheld an order prohibiting similar practices with respect to *any* product that the company advertised.

Petitioners' vagueness fears can be assuaged by resort to the Commission's rules.

> If . . . a situation arises in which [petitioners] are sincerely unable to determine whether a proposed course of action would violate the present order, they can, by complying with the Commission's rules, oblige the Commission to give them definitive advice as to whether their proposed action, if pursued, would constitute compliance with the order.

*Colgate-Palmolive, supra,* 380 U.S. at 394, 85 S.Ct. at 1047 (footnote omitted). *Accord, Fedders Corp. v. FTC, supra,* 529 F.2d at 1404; *see* 16 C.F.R. § 3.61(d).

### D. *The Use of Adjudication in Lieu of Rulemaking*

In reliance on *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), petitioners maintain that the present order is in reality a disguised form of rulemaking intended to have general applicability. The *Wyman-Gordon* case, however, turned on a much different set of circumstances. The procedure challenged there was that the agency was relying on a "rule" that it had announced in an earlier unrelated adjudicatory proceeding in which the NLRB invited employer groups and trade unions to submit briefs as amici curiae and imposed only prospective application of the procedure adopted. The plurality held that the procedure could not be applied to Wyman-Gordon as a rule of general applicability because it had been set forth not by rulemaking but by adjudication. There is no such conduct in the present proceedings, and petitioners completely miss the holding of *Wyman-Gordon* that in fact sustained the NLRB's application to the company in the context of the adjudicatory proceeding against the company of the very procedure invalidated as a rule of general applicability. The procedure, although not a rule of agency practice because of non-compliance with rulemaking requirements, was nevertheless a valid order specifically directed against the company. Norris was similarly involved in an adjudicatory proceeding with an agency whose order against it is properly imposed in that context.

Norris also argues that the Commission should not apply a standard of prior substantiation unless it undertakes to do so "by a proposed industry-wide rule applicable to representations made by all companies in the industry, in accordance with the rulemaking machinery provided by Congress." In the absence of an abuse of discretion in the particular case, however, the agency is not required to proceed by rulemaking rather than adjudication. *Wyman-Gordon* did not alter the established rule that "the choice between rulemaking and adjudication lies in the first instance in the [agency's] discretion." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974). In light of the number and severity of Norris's violations as well as its past history of violations, the Commission has adequately supported its decision to proceed against Norris by adjudication, and it properly imposed the requirement of prior substantiation in its discretion in fashioning a remedy. As the Commission correctly points out in its brief, "a demonstrated violator may appropriately be fenced in by being put to a duty somewhat greater than the Act may require of the world at large." "[T]hose caught violating the Act must expect some fencing in." *FTC v. National Lead Co.,* 352 U.S. 419, 431, 77 S.Ct. 502, 510, 1 L.Ed.2d 438 (1957). *See* note 12 *supra.*

### E. *First Amendment Considerations*

Petitioners' final attack on the Commission's order is based on the line of recent Supreme Court cases extending the protections of the First Amendment to commer-

cial speech.[14] Petitioners argue that the order runs afoul of First Amendment prohibitions, or at the very least amounts to a prior restraint, because it reaches even truthful speech if not substantiated.

The use of the requirement of substantiation as regulation is clearly permissible. Commercial transactions are still subject to governmental regulation, *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); and false or misleading commercial advertising does not have the same protections that similar noncommercial speech may have. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771–72, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *see also Ohralik, supra.* Untruthful commercial speech, or even deceptive or misleading commercial speech, is clearly subject to restraint. *Bates v. State Bar of Arizona,* 433 U.S. 350, 383, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia State Board, supra.* Only because of petitioners' business practices is truthful speech indistinguishable from deceptive speech except by reference to reasonable substantiation for the representations. Petitioners can be constitutionally required to make the distinction obvious in this way.

Even since the briefs in this case were filed, the Supreme Court, on the basis that "restrictions on false, deceptive, and misleading commercial speech" are "permissible," upheld a Texas statute prohibiting the practice of optometry under an assumed name, trade name, or corporate name. *Friedman v. Rogers,* —— U.S. ——, ——, 99 S.Ct. 887, 894, 59 L.Ed.2d 100 (1979).

The FTC is charged by Congress with the duty of protecting consumers from the deceptive and misleading use of commercial speech or advertising, a substantial and, to use the Supreme Court's phrase in *Friedman,* "well-demonstrated," *id.* at ——, 99 S.Ct. 887, interest made national under the Commerce Power. The instant order does no more, and it may even do less, than the Texas statute in *Friedman,* in imposing conditions to avoid deceptive commercial speech; as such it does not infringe the First Amendment. The prohibition in *Friedman* was a total ban on a business practice or form of advertising because of the potential for deception; the prohibition here is only of actually unsubstantiated safety and performance advertising claims for which Norris has shown a marked predisposition. Petitioners must accordingly help enable the public to tell the truthful from the false.

Under traditional First Amendment doctrine, the issue of prior restraint would still remain. We note, however, that even as the Supreme Court held certain commercial speech protected from absolute prohibition, it has seen fit to comment twice already in the short life of First Amendment protection for commercial speech that the doctrine of prior restraint may be inapplicable. *See Friedman, supra,* —— U.S. at —— & n. 9, 99 S.Ct. 887; *Virginia State Board, supra,* 425 U.S. 771 n. 24, 96 S.Ct. 1817, 48 L.Ed.2d 346. On this open question we hold only that because the FTC here imposes the requirement of prior substantiation as a reasonable remedy for past violations of the Act, there is no unconstitutional prior restraint of petitioners' protected speech.

14. The cases include *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (commercial advertising protected, but specific bar to sex-designated want ads upheld); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) (advertisement of abortions referral agency not subject to criminal punishment); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (holding unconstitutional statute that declared advertising of prices of prescription drugs by licensed pharmacist to be unprofessional conduct); *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (ordinance prohibiting real estate "For Sale" or "Sold" signs, ostensibly to prevent "white flight," held unconstitutional); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (routine legal services may be advertised). *See also Beneficial Corp. v. FTC,* 542 F.2d 611 (3d Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977) (overturning FTC ban on "Instant Tax Refund" advertising).

*See* Pitofsky, *Beyond Nader: Consumer Protection and the Regulation of Advertising,* 90 Harv.L.Rev. 661, 671–73 (1977).

## III. MODIFICATION

Although we reject petitioners' attacks on the Commission's order, we rephrase the order in the interest of clarity. We find the order as it comes to us ungrammatical as well as badly worded. We modify it to prohibit petitioners from representing the safety or performance characteristic(s) of any product unless petitioners have a reasonable basis for the representation(s) consisting of competent and objective material, available in written form, that fully and completely substantiates such representation(s).

As modified, enforcement granted. Motion of the parties dated February 21, 1979, for modification of the order of the FTC granted.